UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIO ROMERO-SALAS,<br><br>        Petitioner,<br><br>v.<br><br>WILLIAM BARR, *et al.*,<br><br>        Respondents. | Case No.: 20cv0073-BAS (KSC)<br><br>**ORDER DENYING PETITIONER'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>**[ECF No. 8]** |

  Presently before the Court is Petitioner Julio Romero-Salas's Motion for Preliminary Injunction. ("Mot.," ECF No. 8.) Petitioner is an asylum-seeker from Mexico who is currently in removal proceedings before the Otay Mesa Immigration Court and detained at the Otay Mesa Detention Center. (*Id.* at 2.) He seeks a preliminary injunction requiring the Respondents in this case to release him from their custody if they do not provide him with a constitutionally adequate bond hearing within seven days. Respondents filed an opposition to the Motion, ("Opp'n," ECF No. 11) and Petitioner filed a Reply, ("Reply," ECF No. 12).

  The Court finds this Motion suitable for determination on the papers and without oral argument. Civ. L. R. 7.1(d)(1). For the reasons stated below, the Court **DENIES** the Motion.

## I. BACKGROUND

Petitioner has been in the custody of the United States Department of Homeland Security (DHS) since about May 2, 2019. (Mot. at 2.) He is currently detained at the Otay Mesa Detention Center in San Diego, California. (*Id.*)

Petitioner lived in the United States previously, and between the years 2006 and 2009, he was living in Long Beach, California. While there, he was struck by cars on three separate occasions, which, according to his neuropsychological evaluator, "resulted in posttraumatic amnesia and neuromedical sequelae, consistent with traumatic brain injury (TBI)." (*Id.*) The evaluator diagnosed Petitioner with various mental disorders, and Petitioner does not remember much about the time period, but he remembers experiencing hallucinations. (*Id.*) Also during the 2006 to 2009 time period, Petitioner was convicted of various crimes. He admits,

> In 2007, he was convicted of violating Cal. Penal Code § 853.7 ("Violation of promise to appear as misdemeanor") and sentenced to probation. Later that year, he was convicted of vandalism, in violation of Cal. Penal Code § 594(a), and sentenced to 30 days' imprisonment with probation. Later in 2007, he was convicted of a misdemeanor local ordinance violation and sentenced to two days' imprisonment with probation. He was convicted once more in 2007 of violating section 594(a), for which he received a sentence of 90 days' imprisonment. In 2008, Mr. Romero Salas was convicted once more of vandalism, *see id.*, and sentenced to 90 days' imprisonment plus restitution. He was also convicted that year of violating penal code sections 602(o) (trespass) and 245(a) (assault with a deadly weapon other than a firearm [with likely great bodily injury])—for which he was sentenced to 30 days' imprisonment plus restitution. Finally, Mr. Romero was convicted in 2009 of violating penal code section 148.9(a) (misdemeanor false representation of identity to peace officer) and sentenced to ten days' imprisonment with probation.

(*Id.* at 2–3.) Petitioner also believes he was "falsely accused and convicted of rape in Mexico in either the 1970s or 1990s." (*Id.* at 3; *see also* "Exhibit F to Petition," ECF No. 1-8, at 5 (Petitioner declares, "I think I was convicted [of rape]. I spent about 12 years in the Santa Marta Catitla Penitentiary in Mexico City.").)

In 2010, DHS removed Petitioner to Mexico, where he lived, homeless, for nine years, until "fear of harm in Mexico caused him to flee to the United States" in April 2019. (*Id.*) DHS apprehended him and he was charged with illegal entry in violation of 18 U.S.C. § 1325. (*Id.*; 19-mj-21735-MJS-GPC-1.) The government moved to detain Petitioner, but Judge Curiel denied that motion and set bail at $1,000. After the court ordered a competency evaluation, the government moved to dismiss the complaint against Petitioner. Judge Curiel granted the motion on May 1, 2019. (*Id.*, ECF No. 8.) Petitioner never posted bail in his criminal case. After the complaint was dismissed, DHS took custody of Petitioner. (Mot. at 3.)

On June 21, 2019, DHS filed a Notice to Appear with the Otay Mesa Immigration Court. (*Id.*) On or about July 11, 2019, DHS issued a "Notice of *Franco-Gonzalez* Class Membership" for Petitioner which entitled him to a bond hearing after he had been detained for 180 days. *See Franco-Gonzalez v. Holder*, No. CV 10-2211 DMG (DTBx), 2013 WL 3674492 (C.D. Cal. Apr. 23, 2013); ("Exhibit E to Petition," ECF No. 1-7). On July 18, 2019, an Immigration Judge ("IJ") found Petitioner to be incompetent and appointed him counsel in his removal proceedings. (Mot. at 4; "Medeiros Decl.," ECF No. 1-3, ¶ 1.) Petitioner applied for asylum. (Mot. at 4.) Petitioner's appointed counsel "has found that Mr. Romero's mental disorders create serious obstacles to effectively representing him in connection with his asylum application. Although Mr. Romero has been adamant that he is afraid to return to Mexico, he has been unable fully articulate why." (*Id.*)

A bond hearing was held on December 16, 2019. The IJ found that DHS had established by clear and convincing evidence that Petitioner was a danger to the community and therefore the IJ denied bond. Petitioner filed a timely appeal to the Board of Immigration Appeals (BIA) and the appeal remains pending. (Mot. at 3.) The merits hearing on his asylum application is scheduled for March 31, 2020. (*Id.*; "Exhibit D to Mot.," ECF No. 8-6.) In January 2019, Petitioner filed a petition for habeas corpus pursuant to 28 U.S.C. § 2241 and the present Motion for Preliminary Injunction. Both seek the same relief.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 65 governs the issuance of preliminary injunctions. A preliminary injunction is an equitable remedy aimed at preserving the status quo and at preventing the occurrence of irreparable harm during the course of litigation. *See* Fed. R. Civ. P. 65. "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 22.

## III. ANALYSIS

Petitioner seeks an order that would release him from detention if he is not provided with a "constitutionally adequate" bond hearing within seven days. (Mot. at 1.) He argues if he is released, "venue in his removal proceedings would transfer from the Otay Mesa Immigration Court's expedited detained docket to a non-expedited non-detained docket. And this would give [him]—who prior to his current detention was homeless in Tijuana, and not receiving mental-health treatment—time to rehabilitate." (*Id.* at 7.) This "will increase the likelihood that [he] rehabilitates such that he can better articulate what has happened to him in Mexico and why he is afraid of returning there." (*Id.* at 1.)

### A. <u>Likelihood of Success on the Merits</u>

Petitioner acknowledges that he must overcome various procedural hurdles before the substance of his case may be heard, namely, whether he should be required to exhaust administrative remedies and whether the Court has jurisdiction over his claims. He argues he is able to succeed on the merits of all issues.

#### 1. **Administrative Exhaustion**

Petitioner appealed the IJ's bond denial to the BIA, but the BIA has not issued a ruling on his appeal or even set a briefing schedule. (Mot. at 6.) Petitioner admits that he has not exhausted administrative remedies because he filed his habeas petition in this Court

before the BIA issued a decision. *See Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011) (holding once the BIA rendered its decision, the petitioner "could have properly pursued habeas relief in the district court"). Petitioner argues that he is likely to succeed on his argument that the exhaustion requirement should not prevent the Court from reaching the merits of his habeas petition. (Mot. at 10.) He argues the Court is "quite competent" to analyze the petition without waiting for the BIA's opinion, and he will be irreparably harmed if the Court does not waive exhaustion. (*Id.* at 11–12.)

"District courts are authorized by 28 U.S.C. § 2241 to consider petitions for habeas corpus. That section does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus." *Castro-Cortez v. I.N.S.*, 239 F.3d 1037, 1047 (9th Cir. 2001), *abrogated by Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006). However, as a prudential matter, "habeas petitioners [must] exhaust available judicial and administrative remedies before seeking relief under § 2241." *Id.* Courts may require prudential exhaustion when:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007). If a petitioner fails to exhaust prudentially required administrative remedies, then "a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies." *Leonardo*, 646 F.3d at 1160. Nonetheless, even if the three *Puga* factors weigh in favor of prudential exhaustion, a court may waive the prudential exhaustion requirement if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004) (quoting *SEC v. G.C. George Sec., Inc.*, 637 F.2d 685, 688 (9th Cir. 1981)).

Here, Petitioner first argues that the *Puga* factors do not weigh in favor of the Court

applying the exhaustion requirement. The Court disagrees. Petitioner believes the IJ's determination was wrong, which is an issue that can be directly addressed by the BIA. The BIA can "correct" the IJ's mistake, if it made one. And allowing Petitioner to bypass the BIA and come directly to this Court would indeed encourage others to do the same. *See Rojas–Garcia v. Ashcroft,* 339 F.3d 814, 819 (9th Cir. 2003) (holding a petitioner "must exhaust administrative remedies before raising . . . constitutional claims in a habeas petition when those claims are reviewable by the BIA on appeal . . . 'The exhaustion requirement avoids premature interference with the agency's processes and helps to compile a full judicial record.'"). Therefore, the Court finds it "may" require prudential exhaustion under *Puga*.

Petitioner next argues that the Court should waive the exhaustion requirement because he will be irreparably injured if his challenge is not heard before the merits hearing on his asylum application, which is scheduled for March 31, 2020. In sum, it appears that Petitioner's attorney fears that the asylum claim will be unsuccessful because at this point, neither he nor Petitioner will be able to articulate why Petitioner should be granted asylum. With more time and potential mental health treatment for Petitioner, counsel believes he has a better chance at successfully understanding Petitioner's asylum claim. He states that it is "improbable that the BIA will resolve [Petitioner's] appeal before his merits hearing." (Mot. at 12.)

Based on the short time until the asylum hearing, the Court agrees it is unlikely that the BIA will issue an opinion before the hearing. Further, the Court agrees that the BIA's decision will not add any new facts to the judicial record that would assist the Court in its review of the IJ's decision. The Court agrees that Petitioner would be irreparably harmed if it is determined that Petitioner was not provided with a constitutionally adequate bond hearing and he must adjudicate his asylum claim without that hearing. The Court finds that Petitioner has proved he is likely to succeed on the merits of his argument that the Court should waive the exhaustion requirement.

### 2. Jurisdiction

Petitioner argues he is likely to succeed on the merits of his argument that the Court has jurisdiction over this case. (Mot. at 14.)

After Petitioner had been detained for 180 days, he became a member of the *Franco-Gonzalez* class. *See* 2014 WL 5475097, at *12. Petitioner was granted a bond hearing because of this class membership. At the hearing, the Government bears the burden of justifying the class member's continued detention by clear and convincing evidence. *Id.* at *13. "Immigration Judges may look to a number of factors in determining whether an alien merits release from bond." *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006) (listing the factors). "An Immigration Judge has broad discretion in deciding the factors that he or she may consider in custody redeterminations." *Id.* "The Immigration Judge may choose to give greater weight to one factor over others, as long as the decision is reasonable." *Id.* Here, the IJ concluded that Petitioner should not be released on bond.

"[A] federal district court has habeas jurisdiction under 28 U.S.C. § 2241 to review [ ] bond hearing determinations for constitutional claims and legal error." *Singh v. Holder*, 638 F.3d 1196, 1200–01 (9th Cir. 2011); *see also Singh v. Ashcroft*, 351 F.3d 435, 439 (9th Cir. 2003) (holding the scope of habeas jurisdiction "is limited to claims that allege constitutional or statutory error"). The writ of habeas corpus "is not available to claim that the INS simply came to an unwise, yet lawful, conclusion when it . . . exercise[d] its discretion." *Gutierrez–Chavez v. INS*, 298 F.3d 824, 828 (9th Cir. 2002); *see also Hernandez v. Sessions*, 872 F.3d 976, 989 (9th Cir. 2017) (holding district courts will only have jurisdiction in the "rare case[s]" where petitioners allege a "colorable" constitutional or legal challenge to the government's procedures). The Court cannot determine whether it "believes that the proof establishes, by clear and convincing evidence, that [the petitioner] is a danger to the community." *Nguti v. Sessions*, No. 16-CV-6703, 2017 WL 5891328, at *3 (W.D.N.Y. Nov. 29, 2017). Rather, the Court must decide whether the IJ "relied upon proof that—as a matter of law—could not establish" that conclusion. *Id.*

Here, Petitioner is indeed questioning the IJ's decision not to release him on bond,

but he asserts he is not attacking the IJ's discretion in her weighing of the various factors but is claiming "that the IJ misapplied the 'clear and convincing' standard." (Mot. at 15.) He believes the IJ erred in "overlying [sic] on his past arrests and convictions in the United States[,]" "relying on [Petitioner's] testimony[,]" and "failing to explain why these show that he continues to be dangerous." (*Id.* at 16.) Petitioner cites *Ortega-Rangel v. Sessions*, 313 F. Supp. 3d 993, 1002 (N.D. Cal. 2018), where the court found it had jurisdiction over the petitioner's claim because she was not challenging the IJ's weighing of the evidence, but was contending the IJ violated due process in relying "solely on an arrest to find a danger to the community" when there was no support in the record that she committed the crime for which she was arrested.

Because he is arguing that the IJ relied on proof that could not sufficiently establish dangerousness, the Court finds that Plaintiff has pled that he is likely to succeed on the merits of his argument that the Court has jurisdiction over this case.

### 3. The IJ's Decision

Petitioner argues he is likely to succeed on the merits in arguing that the IJ committed prejudicial legal error in concluding that he is dangerous. (Mot. at 17.)[1]

As noted above, the IJ has broad discretion in his or her consideration of many factors at a bond determination hearing. These factors may include any or all of the following:

> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the

---

[1] The IJ issued an oral decision at Petitioner's December 16, 2019 bond hearing. Petitioner has provided the Court with an audio recording of the hearing. (Exhibit B to Mot., ECF No. 8-4.) After Petitioner filed his habeas petition, the IJ issued a "Bond Memorandum of the Immigration Judge" which explains the IJ's reasoning behind her oral decision. ("Exhibit C to Mot.," ECF No. 8-5.) Petitioner argues that the Court should not consider the memorandum in analyzing the IJ's decision. (Mot. at 8–9 (citing *Singh*, 638 F.3d at 1208).)

The Court does not offer an opinion on whether it can consider the memorandum as well as the IJ's decision at the hearing, as it only evaluated the IJ's decision put forth at oral argument in analyzing Petitioner's Motion.

alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

*Matter of Guerra*, 24 I. & N. Dec. at, 40.

At the bond determination hearing in this matter, the IJ considered Petitioner's own declaration and testimony, wherein he said he was arrested for rape, convicted, and spent about twelve years in the Santa Marta Catitla Penitentiary in Mexico City. (Exhibit B to Mot.; Exhibit F to Petition at 5.) Petitioner also says he did not rape the woman. (Exhibit F to Petition at 5.)

Further, the IJ considered the fact that the last time Petitioner was in the United States, he engaged in quite a bit of criminal activity. Petitioner's crimes range in severity, from an arrest for possession of alcohol and progressing to assault with a deadly weapon with likely great bodily injury. (Exhibit F to Petition at 34–42.) The IJ concluded that the Government had shown by clear and convincing evidence that Petitioner should not be released on bond due to his dangerousness.

The Court finds that the IJ relied on evidence on the record that could establish dangerousness. Petitioner himself testified about his rape conviction, and although his testimony was at times hard to follow, there is no dispute that he admitted to the conviction. (*See also* Exhibit F to Petition at 5 (Petitioner's declaration).) Petitioner declares that he did not commit the rape, (*id.*) but the IJ could not ignore the fact that he was indeed convicted. It seems likely that in many cases, the person convicted of a crime will argue they were wrongly convicted, and while such an assertion is considered by the IJ, that does not mean she should ignore the conviction. Information about Petitioner's other convictions (from 2006 to 2009) was also presented, and the IJ was in possession of detailed information about Petitioner's criminal history. The Government could not provide information as to Petitioner's behavior in the past nine years (because he had been in Mexico), so the IJ considered Petitioner's behavior when he was in the United States.

(*See* Exhibit B to Mot. (the IJ noting that "the last time [Petitioner] was here in the United States he had many encounters with the law in increasing seriousness, and one was a violent offense, . . . an assault with a deadly weapon, not a firearm, great bodily injury likely"). The "recency of [criminal] activity" is only one factor the IJ considers, along with "the extensiveness of criminal activity" and "the seriousness of the offenses." *Singh*, 638 F.3d at 1206.

An IJ may, consistent with due process, rely on pending criminal charges to make a dangerousness finding "if the evidence supporting the charge is specific and probative." *Ortega-Rangel*, 313 F. Supp. 3d at 1005 (citing *Matter of Guerra*, 24 I & N. Dec. at 40). The Court finds the IJ here did so, and Petitioner's rap sheet is specific and not contested. The IJ did not rely on the rap sheet alone, she relied on Petitioner's admission that he was convicted of the crimes and his admission regarding the rape conviction in Mexico. Petitioner's criminal activity while he was in this country could be considered extensive, and some of it serious. The IJ appropriately considered the information in front of her in making her determination. Petitioner stresses that he was not receiving consistent mental health treatment at the time of various infractions, (Reply at 7), and that should be considered. However, Petitioner is not receiving mental health treatment now, and although he may have access to mental health care if he is released, there is nothing conclusive to say that his mental health will improve if he is released. Such information was in front of the IJ as she made her determination of dangerousness. If Petitioner believes that the IJ overweighed certain evidence or did not properly weigh other evidence in the record, that is not a claim that this Court may consider in its analysis.

Again, whether this Court believes that the evidence the IJ considered establishes by clear and convincing evidence that Petitioner is a danger to the community is not the question. The question is whether the IJ relied upon proof that as a matter of law could establish, by clear and convincing evidence, that Petitioner is a danger to the community. Petitioner has not established he is likely to succeed on his argument that the IJ did not rely on such proof.

Petitioner has not met his burden of establishing that he is likely to succeed on the merits of his claim that the IJ committed prejudicial legal error in concluding that he is dangerous. This first factor—likelihood of success on the merits—is "the most important" in a preliminary injunction analysis. *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015). Because it is a threshold inquiry, when "a plaintiff has failed to show the likelihood of success on the merits, [the court] 'need not consider the remaining three [*Winter* elements].'" *Id.* (quoting *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 944 (9th Cir. 2013).

## IV. CONCLUSION

Petitioner is unable to meet his burden in establishing that the IJ committed legal error at his bond determination hearing. Therefore, he is not entitled to a preliminary injunction. The Court **DENIES** Petitioner's motion. (ECF No. 8.) Within fourteen days of the date of this Order, the parties are to file a joint notice informing the Court how this case and Petitioner's habeas petition should proceed, if at all.

**IT IS SO ORDERED.**

DATED: February 26, 2020

Hon. Cynthia Bashant
United States District Judge